## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:19-cr-257-NR |
| | ) | |
| DEON REESE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Deon Reese moves to suppress certain evidence against him that the government acquired via three separate search warrants. ECF 94. The three search warrants, respectively, authorized the government's search and seizure of (1) a cellphone and its data, (2) a Facebook account and its data, and (3) documents that Mr. Reese purportedly handwrote. Mr. Reese argues that these search warrants are invalid, and that suppression is warranted. After carefully considering the parties' briefs, arguments, and the relevant law, the Court denies the motion to suppress for the reasons below.

## FACTUAL & PROCEDURAL BACKGROUND

A grand jury indicted Mr. Reese for four counts: Hobbs Act robbery; conspiracy to commit Hobbs Act robbery; discharge of a firearm in furtherance of a crime of violence; and possession of ammunition by a convicted felon. ECF 1. The indictment arose from an investigation into a shooting that occurred inside a residence in March 2017. *See* ECF 99-1, PDF p. 3. According to the detective investigating the shooting, two individuals broke into the victim's home, where they found the victim in the bedroom. *Id.* The two individuals wore masks, and one was armed with a firearm. *Id.* After the victim tried to wrestle the firearm away from the assailant, the assailant shot the victim in the chest; the other assailant then struck the victim with a chair. *Id.* After the assailants fled, the victim exited the bedroom and sat on his porch,

where he lost consciousness.  *Id.*  Officers found him and transported him to the hospital.  *Id.*

Three weeks later, while the victim was recovering in the hospital and at his father's residence, the victim's family members went to his house to collect some items.  *Id.*  In the bedroom, the family members found an unidentified cellphone.  *Id.*  The victim knew that the cellphone did not belong to him.  *Id.*  As a result, the detective investigating the shooting surmised that one of the assailants may have dropped the phone during the attack, and therefore obtained a search warrant to search and seize the cellphone data.  *Id.* at PDF pp. 1-3.  The resulting search of the cellphone identified the cellphone's owner as Mr. Reese.  ECF 99-2, PDF p. 3.  The search also established that the cellphone's number was linked to a Facebook Profile named "Keon Reese."  *Id.*  The detective consequently obtained a search warrant to search and seize the data and content for this Facebook account.  *Id.* at PDF pp. 1-3.

Mr. Reese was eventually arrested and incarcerated based on this investigation.  While incarcerated, he purportedly handwrote a letter to a third party, seeking to influence the testimony of the victim and a potential witness.  ECF 99-3.  After discovering the letter, detectives launched an investigation to determine whether Mr. Reese wrote this letter—the investigation included obtaining a search warrant for other handwritten documents that Mr. Reese wrote, for comparison (ECF 99-4), as well as seeking previously handwritten documents through separate avenues (*e.g.*, ECF 99-6; ECF 99-8).  Several government reports were eventually written, concluding that Mr. Reese likely wrote the letter at issue.  *See* ECF 99-7 (stating that, while "not a conclusive opinion," there is a "strong probability" that Mr. Reese wrote the letter); ECF 99-11 (stating that, after obtaining and comparing additional handwritten documents from Mr. Reese, Mr. Reese "did write" the letter).

Mr. Reese moves to suppress the evidence derived from these three search warrants—that is, the cellphone warrant, the Facebook warrant, and the

handwritten-documents warrant.  ECF 94.  The government opposes the motion.
ECF 99.  The parties have fully briefed the motion and the matter is ready for
disposition.[1]

## DISCUSSION & ANALYSIS

### I.     The cellphone warrant was valid.

Mr. Reese first seeks to suppress evidence of the cellphone data that the
government acquired after obtaining the warrant to search the cellphone found at the
crime scene.  Mr. Reese argues there was no probable cause justifying the search
warrant, and the warrant did not describe the information to be seized with sufficient
particularity.  ECF 94, pp. 1-3.  Both arguments fall short.[2]

#### A.     Probable cause existed for the warrant.

To begin with, the Court finds that there was sufficient probable cause for the
warrant.

In reviewing whether the magistrate judge correctly found probable cause to
issue the warrant, the reviewing court must "simply … ensure that the magistrate
had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*,
462 U.S. 213, 238-39 (1983) (cleaned up); *see also United States v. Leon*, 468 U.S. 897,
915 (1984) ("Sufficient information must be presented to the magistrate to allow that

---

[1] Neither party requested an evidentiary hearing on the motion to suppress, except
for Mr. Reese requesting a separate *Franks* hearing.  As discussed below, Mr. Reese
has not met his burden for a *Franks* hearing.  Beyond that, the remaining arguments
raised in the motion concern the facial validity of the warrants, and therefore the
Court finds that no hearing is necessary to resolve the motion.  *See United States v.
Hines*, 628 F.3d 101, 105 (3d Cir. 2010).

[2] In seeking to suppress evidence, Mr. Reese bears the initial burden of proof to show
that suppression is warranted.  *United States v. Benoit*, 730 F.3d 280, 288 (3d Cir.
2013).  The burden shifts to the government to show that the search was reasonable
only if Mr. Reese "has established a basis for his motion."  *Id.* (cleaned up).  A
defendant's conclusory allegations do not shift the burden to the government.  *Id.*

official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." (cleaned up)).

This Court, as the reviewing court, thus has a "limited" role—the Court "is not to conduct a *de novo* review" of the magistrate judge's determination of probable cause. *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). Indeed, though "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, … the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914 (citations omitted). Therefore, while the reviewing court shouldn't "simply rubber stamp a magistrate's conclusions," the deference to the magistrate judge's determination means that "the resolution of doubtful or marginal cases … should be largely determined by the preference to be accorded to warrants." *Jones*, 994 F.2d at 1055 (cleaned up); *see also id.* at 1057 ("[O]ur role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.").

Further, in determining whether the magistrate judge had a "substantial basis" to find probable cause, the Court is mindful that the magistrate judge's determination of probable cause is based on a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, … there is a fair probability that contraband or evidence of a crime will be found in a particular place."[3] *Gates*, 462 U.S. at 238; *see also United States v. Whitner*, 219 F.3d 289, 296

---

[3] Probable cause requires "only the probability, and not a prima facie showing, of criminal activity." *Gates*, 462 U.S. at 235 (cleaned up). It's a "practical, nontechnical conception," based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231 (cleaned up). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property"—further, "direct

(3d Cir. 2000) ("The [warrant's] supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. … Furthermore, [the] magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." (cleaned up)).

Applying a deferential and commonsense review to the warrant application and accompanying affidavit here,[4] the Court finds that the magistrate judge had a substantial basis for concluding that probable cause existed to authorize the search warrant.  As stated in the affidavit (ECF 99-1, PDF p. 3), the need for the search warrant arose after a person was shot inside his home.  The affidavit asserts that two masked men broke into the victim's house, and shot him in his bedroom.  After the assailants fled, the victim immediately went outside and lost consciousness; he was transported to the hospital after officers found him on his porch.  Three weeks later, while the victim was still recovering *away from his home*, his family members found

___

evidence" of a crime is not required.  *Jones*, 994 F.2d at 1056 (cleaned up); *see also United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006).

[4] The search warrant application properly attached and expressly incorporated the accompanying affidavit.  *See Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004) ("[M]ost Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." (citations omitted)).  On the warrant application, the detective marked the box stating, "Probable Cause Affidavit(s) MUST be attached," and handwrote that there were "3" total pages.  ECF 99-1, PDF p. 1.  The application then states that this "total number of pages is sum of all application."  *Id.*  Additionally, the accompanying affidavit is noted as being "page 3 of 3" of the application."  *Id.* at PDF p. 3.  Finally, in authorizing the search warrant, the magistrate judge expressly affirmed that his determination of probable cause was based on the accompanying affidavit.  *Id.* at PDF p. 1.  The Court finds that all of this is sufficient to incorporate the affidavit, and thus it is appropriate for the Court to examine the affidavit in assessing the validity of the warrant.

an unidentified cellphone in his bedroom—*where the attack occurred*—that did not belong to the victim.  The commonsense conclusion, and the one the victim reached, was that one of the attackers dropped the phone during the attack.  Based on his training and experience, the detective applying for the warrant believed that this unidentified cellphone, found at the crime scene, would  contain (1) evidence of the crime (especially because there were two assailants who presumably communicated with each other before the attack), and (2) evidence as to the identify of at least one of the attackers.

Based on the totality of the circumstances and reasonable inferences, the officer's experience and training, and a commonsense review of the affidavit, the Court finds that there is a substantial basis for the magistrate judge's determination of probable cause.[5]

### B.    The warrant was sufficiently particularized.

Mr. Reese also argues that the cellphone warrant did not identify the information to be seized with reasonable particularity.  *See* U.S. Const., amend. IV ("[N]o Warrants shall issue … [without] particularly describing the place to be searched, and the persons or things to be seized.").  Specifically, he asserts that the

---

[5] Mr. Reese's arguments to the contrary do not undermine this conclusion.  He argues that there was no probable cause because the cellphone was found three weeks after the attack, and because the affidavit was based on the victim's "subjective belief[s]." Neither argument undermines the existence of probable cause.  Arguably, the three-week delay might suggest that it was less likely that the phone belonged to the alleged attacker.  But probable cause concerns only the "probability" of criminal activity, and considering all of the circumstances outlined above (*e.g.*, the phone being found in the bedroom where the attack occurred, while the occupant was recovering elsewhere), the delay alone does not negate probable cause here.  Additionally, with respect to the victim's "subjective beliefs," there is nothing in the record showing that the victim's statements to the detective were implausible or lacked credibility.  At bottom, these arguments go to the weight of the evidence, and Mr. Reese can certainly make them at trial to suggest that the seized phone was not his—but they do not undermine the magistrate judge's finding of probable cause.

warrant improperly authorized the collection of "all electronic data" with no time parameters for the search.[6]  ECF 94, p. 3.  The Court disagrees.

"Particularity has three components: First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes."  *United States v. Perez*, 712 F. App'x 136, 138-39 (cleaned up).  It's the third component at issue here.

While courts "have struggled to adapt Fourth Amendment search doctrines designed for physical spaces to digital contexts," *id.* at 139, courts generally recognize that search warrants may authorize broad searches of electronic data on cellphones and computers, without violating the particularity requirement.  Indeed, many courts have acknowledged that "because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required."  *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011) (citations omitted); *see also United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) ("Federal courts, however, have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers, because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity such that a broad, expansive search of the computer may be required." (cleaned up)); *United States v. Dewald*, 361 F. Supp. 3d 413, 421-22 (M.D. Pa. 2019).

Courts are also mindful that when it comes to electronic data, it is often impossible for law enforcement, beforehand, to detail precisely the evidence that will

---

[6]  The warrant authorized the search and seizure of: "All electronic data, files and folders including but not limited to personal communications in the form of text, writings, images, phone numbers, contact list, call history, SMS messages, MMS messages, memos, voice recordings, video files, audio files, calendars, and web history contained within the internal and/or removal storage devices associated [with the cellphone]."  ECF 99-1, PDF p. 1.

be found, and its location within the electronic device. *See United States v. Bishop*, 910 F.3d 335, 337-38 (7th Cir. 2018) ("[S]pecificity is a relative matter. A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation. … This warrant was as specific as circumstances allowed. The Constitution does not require more."); *Bass*, 785 F.3d at 1050 ("Here, the warrant authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs. At the time of the seizure, however, the officers could not have known where this information was located in the phone or in what format. Thus, the broad scope of the warrant was reasonable under the circumstances at that time."); *see also United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) ("[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate."); *cf. United States v. Smith*, No. 19-324, 2021 WL 2982144, at *10 (D.D.C. July 15, 2021) ("Warrants need not contain specific time limits, when dates of specific documents relevant to the offenses at issue could not have been known to the Government, or when evidence that dates from outside of the time period described in a warrant affidavit may be relevant to the activity within the time period." (cleaned up)).

Thus, contrary to Mr. Reese's arguments, the fact that the cellphone warrant at issue sweeps broadly does not necessarily mean it lacked particularity.

In any event, moreover, the search warrant was sufficiently particularized as it did not sweep as broadly as Mr. Reese suggests.  This is because the search warrant expressly incorporated the accompanying affidavit, which together established the parameters for the search. *See Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 440 (6th Cir. 2006) ("[A]ll of the courts of appeals … have permitted warrants to cross-

reference supporting affidavits and to satisfy the particularity requirement through an incorporated and attached document—at least when it comes to the validity of the warrant at the time of issuance." (citations omitted)).  That is, when the warrant and incorporated affidavit expressly reference the criminal offense that is the impetus for the warrant, the search warrant is accordingly limited to searching for evidence related to that offense, and is thus adequately particularized.  *See, e.g.*, *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime."); *Bishop*, 910 F.3d at 337 ("It is enough … if the warrant cabins the things being looked for by stating what crime is under investigation."); *Smith*, 2021 WL 2982144, at *8-9 (same, and collecting cases).[7]

The cellphone warrant and affidavit here was so contextually limited.  The search warrant explicitly stated that the alleged crime was "Criminal Attempt –

---

[7] For example, in *Castro*, the Sixth Circuit concluded that the warrant to search the defendant's cellphone was sufficiently particularized because it referenced the defendant's alleged violation of "Texas Penal Code 29.03 (Aggravated Burglary)," which was a "global modifier" that "limited the scope of the warrant to evidence of aggravated burglary"—which "[r]ead as a whole, [thus] told officers they could search only for evidence related to aggravated burglary." *Castro*, 881 F.3d at 965. Similarly, the Seventh Circuit in *Bishop* concluded that the warrant was sufficiently particularized, even though it "permit[ted] the police to look at every file on [the defendant's] phone and decide which files satisfy the description." *Bishop*, 910 F.3d at 336.  There, the court reasoned: "Criminals don't advertise where they keep evidence. A … warrant authorizing a search for documents that will prove a crime may authorize a search of every document the suspect has, because any of them might supply evidence. … Just so with this warrant. It permits the search of every document on the cell phone, which (like a computer) serves the same function as the filing cabinets[.] … And as with filing cabinets, the incriminating evidence may be in any file or folder. That's why courts routinely conclude that warrants with wording similar to the one at issue here are valid." *Id.* at 336-37 (citations omitted); *see also Smith*, 2021 WL 2982144, at *8-10 (adopting similar reasoning, and rejecting the defendant's arguments that the warrant was insufficiently particularized due to being overly broad because there were no limits on the file types to be searched nor any date limitations on the files to be searched); *United States v. Zongli Chang*, No. 18-20008, 2018 WL 3640435, at *5 (E.D. Mich. July 31, 2018) (same).

Homicide" in violation of "PACC 901, 2501"; it also stated that the owner of the cellphone was "Unknown." ECF 99-1, PDF p. 1. And as discussed above, the accompanying affidavit described the attempted homicide, as well as how the unidentified phone was discovered. *Id.* at PDF p. 3. Further, the magistrate judge, in authorizing the search warrant, expressly incorporated the affidavit as the basis for probable cause. *Id.* at PDF p. 1. Thus, reading the warrant and affidavit as a whole, the authorized search was limited to finding evidence related to the listed crime, and determining the identity of the unknown owner (*i.e.*, one of the suspects). As such, the cellphone warrant was sufficiently particularized.

For all these reasons, the cellphone warrant was valid. The Court therefore denies Mr. Reese's motion as to this warrant.

## II.   The Facebook warrant was valid.

Mr. Reese also moves to suppress evidence of his Facebook account content, which the government obtained via a second search warrant. ECF 94, pp. 4-5. Probable cause for this Facebook warrant was based largely on evidence derived from the cellphone warrant discussed above. That is, after searching the cellphone pursuant to the cellphone warrant, investigators learned it belonged to Mr. Reese, and that a Facebook account was linked to the cellphone's number. ECF 99-2, PDF pp. 1-3. Mr. Reese now argues that because the cellphone warrant is invalid and the cellphone evidence must be suppressed, the Facebook warrant lacked probable cause and is thus also invalid. ECF 94, pp. 4-5.

As explained above, however, the cellphone warrant was valid; as such, Mr. Reese's challenge to the Facebook warrant fails. The government was authorized to seize the cellphone data that formed the basis for the Facebook warrant. The Court finds, and Mr. Reese does not contest, that when considering the cellphone evidence,

there was a substantial basis for the judge to find probable cause to authorize the Facebook warrant. Therefore, the Court denies Mr. Reese's motion as to this warrant.

## III.   The handwritten-documents warrant.

Lastly, Mr. Reese moves to suppress certain evidence of documents handwritten by Mr. Reese, arguing there was no probable cause justifying the warrant. ECF 94, pp. 5-6. He also requests a *Franks* hearing as to this warrant. The Court finds that Mr. Reese has not met his burden to obtain a *Franks* hearing, and in any event, his motion is moot.

First, as to the requested *Franks* hearing, Mr. Reese has not made the requisite "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]" *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Mr. Reese asserts that the government failed to include a report with the warrant affidavit that, according to Mr. Reese, would have negated any probable cause for this warrant. ECF 94, pp. 5-6. But this report that Mr. Reese points to did not exist when the warrant issued. That is, this warrant issued on December 4, 2017. ECF 99-4. Yet the report that Mr. Reese relies on is dated February 23, 2018, over two months later. ECF 99-7. Mr. Reese has not met his burden, so no *Franks* hearing is warranted.

Second, as to the alleged lack of probable cause for this warrant, Mr. Reese's arguments are moot. The government has represented that it has not acquired any evidence derived from this warrant, and thus does not intend to introduce any such evidence at trial. ECF 99, pp. 17-18. So there is nothing to suppress. The Court therefore denies Mr. Reese's motion to suppress as to this warrant, though without

prejudice to Mr. Reese re-raising his arguments if the government later relies on evidence derived from this warrant.

********************

Accordingly, this **27th day of September, 2021**, it is **hereby ORDERED** that Defendant's motion to suppress (ECF 94) is **DENIED**.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge